# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 15-941V
Filed: September 15, 2016

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | UNPUBLISHED |
| LORNETTE AMELIA LEWIS, | * | |
| | * | Special Master Gowen |
| Petitioner, | * | |
| | * | |
| v. | * | Final Attorneys' Fees and Costs; |
| | * | Reasonable Basis. |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * | | |

Phyllis Widman, Widman Law Firm, LLC, Ocean City, NJ, for petitioner.
Sarah C. Duncan, United States Department of Justice, Washington, DC, for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On August 27, 2015, Lornette Amelia Lewis ("petitioner") filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program.[2] 42 U.S.C. §§ 300aa-1 to 34 (2012). Petitioner alleged that as a result of receiving a tetanus diphtheria ("Td") vaccine on September 28, 2011, she suffered a tetanus infection. Petition at Preamble. On petitioner's motion, a Decision dismissing the petition for insufficient proof was issued June 27, 2016.

On July 25, 2016, petitioner filed a motion for attorneys' fees and costs. Petitioner's ("Pet.") Motion ("Mot."). Respondent filed a response on August 11, 2016, asserting the petition

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

1

lacked a reasonable basis and objecting to any award of fees or costs in this case. Respondent's ("Resp.") Response at 1. Petitioner filed a reply in support of her motion on August 22, 2016. On August 23, 2016, petitioner filed an amended motion for attorneys' fees and costs. Petitioner requests $17,520.00 in attorneys' fees, $629.82 in attorneys' costs, and $76.38 in petitioner's costs, for a total fees and costs request of $18,226.20. Pet. Amended Mot. at 3.

For the reasons discussed below, the undersigned finds that petitioner has demonstrated a reasonable basis for the petition, and therefore may be awarded reasonable attorneys' fees and costs.

**I.      Procedural History**

Petitioner filed a petition *pro se* on August 27, 2015, alleging that as the result of receiving a Tetanus Diphtheria ("Td") vaccine on September 28, 2011, she suffered a "tetanus infection" as evidenced by symptoms of "spastic dysphonia, myoclonus, and laryngospasms." Petition at Preamble. Petitioner alleged that prior to her vaccination, she was in "relatively good health and suffered no long-term medical conditions with the exception of Cluster Headaches with associated Trigeminal Neuralgia." Id. at ¶ 3. According to petitioner, in August 2012 she experienced symptoms she believed were caused by the Td vaccine, namely "an episode of difficulty concentrating and mental sluggishness." Id. at ¶ 4. Along with the petition, petitioner filed excerpts of medical records, seven medical articles, a social security disability decision, and an affidavit. On September 25, 2015, petitioner filed additional medical records and medical literature.

An initial status conference was held on September 29, 2015. During this status conference, petitioner was encouraged to obtain counsel. A list of attorneys admitted to practice in the Vaccine Program was mailed to petitioner, along with the order setting a deadline of November 30, 2015, to have an attorney substitute as counsel.

On December 28, 2015, attorney Phyllis Widman substituted as counsel for petitioner. A status conference was held on February 25, 2016, after which petitioner was ordered to file complete medical records by April 25, 2016, including pre-vaccination records and records related to petitioner's Social Security Disability application.

Petitioner filed eleven additional exhibits of medical records thereafter. On April 21, 2016, petitioner's counsel filed an unopposed motion for an extension of time until June 24, 2016, to file outstanding medical records, as some of the requests for medical records remained unanswered by the providers. Petitioner was granted until June 7, 2016, to file the additional medical records and a Statement of Completion. On May 31, 2016, petitioner's counsel contacted the undersigned's chambers to request a status conference to discuss the progress in obtaining the medical records and additional proceedings. A status conference was held on June 7, 2016, during which the undersigned "discussed several significant issues with petitioner's case and advised petitioner's counsel to evaluate the feasibility of additional proceedings" after having the benefit of reviewing the medical records petitioner's counsel had filed to date. Order, filed June 7, 2016. On June 27, 2016, petitioner filed an unopposed motion to dismiss, which was granted that same day in a decision dismissing this case for insufficient proof. See Decision, filed June 27, 2016.

On July 25, 2016, petitioner filed a motion for attorneys' fees and costs. Respondent filed a response on August 11, 2016, asserting that this case lacked a reasonable basis and objecting to any award of fees or costs. Resp. Response at 1. Petitioner filed a reply in support of her motion on August 22, 2016. On August 23, 2016, petitioner filed an amended motion for attorneys' fees and costs.[3] Petitioner requests $17,520.00 in attorneys' fees, $629.82 in attorneys' costs,[4] and $76.38 in petitioner's costs, for a total fees and costs request of $18,226.20. Pet. Amended Mot. at 3.

Petitioner's motion for attorneys' fees and costs is now ripe for a decision.

**II.     Good Faith and Reasonable Basis**

    **a. Legal Standard**

Section 15(e) of the Vaccine Act governs attorneys' fees. 42 U.S.C. § 300aa-15(e). When awarding compensation on a petition, the special master "shall also award" reasonable attorney's fees and costs. Id. at §15(e)(1)(A)-(B). Even when compensation is not awarded, the special master "may award" reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. at § 15(e)(1).

"Good faith" is a subjective standard and petitioners are entitled to a presumption of good faith. Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007); Grice v. Sec'y of Health & Human Servs., 36 Fed. Cl. 114, 121 (1996). Respondent does not challenge the presumption of good faith in this case, and the undersigned finds that this case was brought in good faith. Resp. Response at 13. Therefore, the question at issue is whether petitioner had reasonable basis to pursue her claim.

The Vaccine Act does not define "reasonable basis," and neither the Federal Circuit nor the Court of Federal Claims has defined "reasonable basis" for purposes of fee awards under the Vaccine Act. Chuisano v. United States, 116 Fed. Cl. 276, 285 (Fed. Cl. 2014). The Court of Federal Claims has held that the statutory language of 42 U.S.C. § 300aa-15(e)(1)(B) grants the special master "maximum discretion in applying the standard." Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 402 (Fed. Cl. 2012). Historically, the court has been "quite generous" in finding a reasonable basis. Turpin ex rel. Turpin v. Sec'y of Health & Human Servs., No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Apr. 26, 2005).

---

[3] Petitioner's original motion requested $15,720.00 in attorneys' fees, $106.45 in attorneys' costs, $450.00 in petitioner's costs, and $523.37 in unpaid costs. Pet. Mot. at 3. Petitioner's amended motion requests an additional $1,800.00 in attorneys' fees for 6 hours spent working on petitioner's fee reply and amends the amount of petitioner's costs to $76.38, as petitioner's motion to proceed *in forma pauperis* was granted on September 16, 2015, and thus she did not incur the filing fee. Pet. Amended Mot. at 3.

[4] Petitioner's motion treats "attorneys' costs" separately from "unpaid costs." See Pet. Amended Mot. at 3. For purposes of this decision, the "unpaid costs" are treated and awarded as attorneys' costs.

Many special masters and Court of Federal Claims judges have determined that the reasonable basis requirement is an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 303 (Fed. Cl. 2011); Chuisano, 116 Fed. Cl. at 286. In determining reasonable basis, the court looks "not at the likelihood of success, but more to the feasibility of the claim." Di Roma v. Sec'y of Health & Human Servs., No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Factors to be considered include factual basis, medical support, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6-9. An attorney's pre-filing investigation into the feasibility of the claim is also a relevant factor in analyzing whether a petition had a reasonable basis. Cortez v. Sec'y of Health & Human Servs., No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014). A reasonable basis can exist even if medical records are not filed simultaneously with the petition. McKellar, 101 Fed. Cl. at 303.

While the burden is on petitioner to affirmatively demonstrate a reasonable basis, "petitioner need not establish entitlement to compensation, or even that a claim is likely to succeed." McKellar v. Sec'y of Health & Human Servs., No. 09-841V, 2012 WL 362030, at *6-7 (Fed. Cl. Spec. Mstr. Jan 13, 2012), reversed on other grounds, 2012 WL 1884703 (Fed. Cl. 2012). Indeed, while petitioner must furnish "some evidence" supporting the claims in the petition, the evidentiary showing is less than a preponderance of the evidence. Chuisano v. Sec'y of Health & Human Servs., No. 07-452V, 2013 WL 6234660, at *1, 13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013). A claim that has a reasonable basis at filing may lose reasonable basis while the case is pending. See Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375 (Fed. Cir. 1994).

### b. Reasonable Basis for Petitioner's Claim

    i.    Respondent's Position

Respondent asserts that no attorneys' fees or costs should be paid in this case because the claim lacked a reasonable basis throughout its pendency. Resp. Response at 21. Respondent emphasizes that reasonable basis must be supported by a "factual basis" in the form of medical records or medical opinion. Id. at 14-15 (quoting Everett v. Sec'y of Health & Human Servs., No. 91-1115V, 1992 WL 35863, at *2 (Cl. Ct. Spec. Mstr. Feb. 7, 1992)). The medical records in this case, respondent asserts, reveal several factual deficiencies with petitioner's claim that should have been apparent to Ms. Widman at the outset based on the medical records petitioner filed *pro se* and the fact that Ms. Widman "could have obtained and reviewed nearly all of the medical records ultimately filed in the case prior to taking the case," given that it had been nearly 4 years after the vaccination at issue. Resp. Response at 20. Accordingly, respondent argues that because petitioner's counsel has a responsibility to investigate the facts underlying a claim prior to accepting a case, counsel should have become aware of the factual issues in this case prior to accepting representation, and should have known no reasonable basis existed for petitioner's claim. Id. at 15-16 (citing Lamb v. Sec'y of Health & Servs., 24 Cl. Ct. 255, 259 (1991)).

The factual deficiencies that respondent identifies are as follows. First, that petitioner's medical records do not establish that petitioner actually suffered from the condition alleged in the petition—a "tetanus infection" as evidenced by symptoms of "spastic dysphonia, myoclonus, and

laryngospasms." Resp. Response at 17; Petition at 1.  Respondent notes that while petitioner was diagnosed with spastic dysphonia, myoclonus, and laryngospasms after her vaccination, no treating physician diagnosed her with a tetanus infection.  Resp. Response at 17.  Second, respondent that petitioner's claim involves injuries for which the first symptom of onset occurred more than a year after vaccination.  Id.  Petitioner received the Td vaccine on September 28, 2011.  The petition alleges that petitioner experienced an episode of difficulty speaking and mental sluggishness in August 2012, 11 months after vaccination, the medical records reflect that petitioner first reported having trouble processing and thinking on October 25, 2012, 13 months after her vaccination, and other medical records indicate that petitioner reported spastic dysphonia in January 2013, 16 months after vaccination.  Id. at 18.  Third, that petitioner failed to file any medical records in which a treating physician attributed causation of any of petitioner's problems to her September 28, 2011, vaccination.  Id.  Finally, respondent states that the medical literature filed is insufficient to establish reasonable basis, nor did petitioner file a report from an expert opining that the Td vaccination caused her symptoms, despite contacting up to 8 experts.[5]  Id. at 18-19.

> ii.   A Reasonable Basis Existed for Petitioner's Claim

The undersigned finds that reasonable basis for petitioner's claim existed at the time Ms. Widman accepted representation.  Petitioner filed the petition *pro se* close to the statute of limitations.  Based on the petition and petitioner's other initial filings, which included medical records, medical articles, a social security disability decision, and an affidavit, the undersigned was unable to rule out the possibility that petitioner could establish entitlement to compensation.  As respondent notes, "petitioner's medical records reflect that since her September 28, 2011 Td vaccination, she has been diagnosed with cluster headache, spastic dysphonia, insomnia, trigeminal neuralgia, action tremor, spastic speech/dysphonia, possible conversion disorder, possible psychogenic movement disorder, laryngospasm, possible seizures, possible Parkinson's, sciatica, myoclonus, other disease of the larynx, convulsions, possible neurosyphilis, nonepileptic seizures, pseudoseizures, [and] psychogenic stuttering."  Resp. Response at 17 (internal citations omitted).  The fact that petitioner did not have a clear diagnosis does not obviate the reasonable basis of her claim, and treating physicians do not typically attribute causation to vaccines.  See Pet. Reply at 5.  Rather, petitioner had a complex medical history that appeared to include an autoimmune disease.  The petition did allege that petitioner had myoclonus, and diagnoses of myoclonus and sciatica are referenced in the medical records petitioner filed with her petition.  See, e.g. Ex. 15 at 1-2.  Petitioner's theory of autoimmune etiology was therefore sufficiently plausible to make her case worth investigating to a certain point.

Because it was difficult to sort out petitioner's claim at the initial status conference on September 29, 2015, the undersigned encouraged petitioner to obtain an attorney.  See Order, dated, Sept. 30, 2015.  Petitioner contacted Ms. Widman on October 2, 2015, and Ms. Widman was substituted as counsel on December 28, 2015.  As respondent notes, Ms. Widman billed 6.35 hours between October 2, 2015, and December 28, 2015.  Resp. Response at 10; Pet. Mot. Ex. A

---

[5] Respondent states that counsel consulted both "up to eight" and "up to six" experts.  Resp. Response at 19-20.  From a review of Ms. Widman's billing record, it is not clear precisely how many experts she consulted, but she does appear to have consulted several.

at 1. Respondent asserts that "only 1.4 of [those hours were] spent reviewing the medical records and medical literature petitioner had filed." Resp. Response at 19. However, a review of Ms. Widman's billing record also shows that the majority of the remaining 6.35 hours were spent communicating with petitioner. Pet. Mot. Ex. A at 1. As Ms. Widman notes, petitioner is a nurse, and Ms. Widman states that her conversations with petitioner were medically detailed and that prior to entering an appearance Ms. Widman "spoke[] with [petitioner] at length regarding [petitioner's] medical condition and her theory of causation." Pet. Reply at 2.

After substituting as counsel on December 28, 2015, Ms. Widman continued speaking with petitioner and consulted several experts. A status conference was held February 25, 2016, during which "the parties and the undersigned agreed to proceed with clarifying the medical record in this case" and petitioner was ordered to file complete medical records. Order, dated Feb. 25, 2016. Petitioner subsequently did so, and another status conference was held on June 7, 2016. "During the [June 7] status conference, the undersigned discussed several significant issues with petitioner's case and advised petitioner's counsel to evaluate the feasibility of additional proceedings." Order, dated June 7, 2016. Immediately following the June 7, 2016, status conference, Ms. Widman spoke with Dr. Marcel Kinsbourne. Pet. Reply at 4. Dr. Kinsbourne has particular expertise in opsoclonus-myoclonus syndrome, and opined that petitioner likely did have this rare condition, but stated that he did not believe it was caused by the vaccine. Id. Petitioner filed a motion to dismiss on June 27, 2016. Thus, during the course of her representation, Ms. Widman gathered medical records and attempted to obtain an expert. She ultimately did obtain an expert opinion as to the diagnosis of petitioner's rare condition but at the same time received the opinion that it was unable to be related to the vaccine. Once the undersigned advised her of the problems with the case and she received a diagnosis and unfavorable opinion on causation from Dr. Kinsbourne, Ms. Widman prevailed on her client to dismiss the case and moved for a dismissal promptly thereafter. Her work saved the court significant time that would have been required to develop and analyze this case in a manner fair to a *pro se* petitioner.

Respondent cites Everett in support of her opposition to fees. In Everett, the court "recogniz[ed] that it may have been necessary to incur some costs to determine whether or not there was a reasonable basis to file a petition . . . . However, to [award compensation for such costs] would only encourage the filing of non-meritorious petitions for the sole purpose of recovering out of pocket costs." Everett, 1992 WL 35863, at *2. This is not a case in which awarding attorneys' fees and costs would encourage the filing of non-meritorious petitions. Ms. Widman did not file this case anew. She took on a *pro se* plaintiff and investigated the case. In this regard, she performed a service both to her client and the court. Sorting out the record and diagnosis in this case, much less the medical causation, would have been difficult for the court without the assistance of counsel. As Ms. Widman states, "[t]he policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases [is] ensuring that litigants have ready access to competent representation." Pet. Reply at 6 (quoting Austin v. Sec'y of Health & Human Servs., No. 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013)). Reasonable basis is not dependent on complete medical records being filed with the petition or at the time of accepting representation, and while an attorney's pre-filing investigation is a relevant factor, the ultimate determination of reasonable basis is based on the totality of the circumstances. McKellar, 101 Fed. Cl. at 303; Chuisano, 116 Fed. Cl. at 286. In this case, Ms. Widman filed a motion to dismiss shortly after it became clear that

petitioner's claim was not feasible. Thus, Ms. Widman represented petitioner until, but not beyond, the point where it became evident that petitioner's claim lacked reasonable basis. The undersigned will award attorneys' fees and costs for Ms. Widman's work on this case.

### III.    Attorneys' Fees and Costs

#### c.    Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera, 515 F.3d at 1349. Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Just as "[t]rial court courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521 (citing Farrar v. Sec'y of Health & Human Servs., 1992 WL 336502 at * 2-3 (Cl. Ct. Spec. Mstr. Nov. 2, 1992)).

####        i.    Hourly Rates and Hours Expended

Ms. Widman requests an hourly rate of $300 per hour. Pet. Mot. Ex. A at 7. The issue of appropriate hourly forum rates was recently ruled upon by the undersigned in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Under McCulloch, the range of $300 to $375 per hour is appropriate for attorneys with 11 to 19 years of experience. McCulloch, 2015 WL 5634323, at *19. Ms. Widman has been licensed to practice law for 17 years. Pet. Reply at 7. Thus, her requested rate of $300 is at the lowest end of the McCulloch range for attorneys with similar years of experience, and the undersigned finds the requested rate reasonable.

Some of the hours Ms. Widman billed, however, represent work that is paralegal in nature. Attorneys may be compensated for paralegal-level work, but at a rate that is comparable to what would be paid for a paralegal. Doe/11 v. Sec'y of Health & Human Servs., No. XX-XXXV, 2010 WL 529425, at *9-10 (Fed. Cl. Spec. Mstr. Jan. 29, 2010) (citing Missouri v. Jenkins, 491 U.S. 274, 288 (1989)). "It is the nature of the work, not the title or education of the person performing it, that determines whether it is legal, paralegal, or secretarial/clerical in nature." Id. Paralegal tasks include preparing and filing exhibits and exhibit lists and requesting medical records. See, e.g. Mostovoy, No. 02-10V, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016); Garcia v. Sec'y of Health & Human Servs., No. 07-286V, 2011 WL 6941702, at *9 (Fed. Cl. Spec. Mstr. Dec. 13, 2011) (citing Valdes v. Sec'y of Health & Human Servs., No. 99-310V, 89 Fed. Cl. 415, 425 (2009)). In McCulloch, paralegals were awarded $135 per hour. 2015 WL 5634323, at *21. On review of the billing record, it appears that Ms. Widman spent approximately 4.85 hours requesting and corresponding with providers regarding obtaining petitioner's medical records and preparing exhibits for filing. See Pet. Amended App., Ex. A at 3-6. Accordingly, 4.85 hours of Ms. Widman's time will be compensated at a rate of $135 per hour, and petitioner's fee request will be reduced by $800.25.

Ms. Widman spent 58.40 hours on this case. Pet. Amended Mot., Ex. A at 7. Petitioner's fee application includes an adequate log of the dates, hours, and nature of services performed on this case. See generally, id. On review of counsel's billing record, the undersigned finds the number of hours expended reasonable.

### d. Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests $106.45 in attorneys' costs, $76.38 in petitioner's costs,[6] and $523.37 in unpaid costs. Pet. Amended Mot. at 3. The submitted costs consist almost entirely of medical record fees, and the undersigned finds them reasonable. See id., Exs. B, C.

## IV. Conclusion

An award should be made as follows:

**(1) A lump sum of $17,349.57 in the form of a check jointly payable to petitioner and to petitioner's attorney, Phyllis Widman, of Widman Law Firm, LLC, for attorneys' fees and costs.**

**(2) A lump sum of $76.38 in the form of a check payable to petitioner, for petitioner's costs.**

---

[6] Petitioner's original fee application requested $450.00 in petitioner's costs, which represented the filing fee and "approximate cost postage & records." Pet. Mot. at 3; Pet. Mot., Ex. C at 2. Petitioner's amended motion requests $76.38, which reflects the costs of medical records and postage. Pet. Amended Mot., Ex. C at 2. Petitioner's motion to proceed *in forma pauperis* was granted on September 16, 2015, and petitioner thus did not pay the filing fee in this case.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance herewith.[7]

**IT IS SO ORDERED.**

**s/ Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.